IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Dwight Freeman,** | : | |
| Plaintiff | : | Civil Action 2:08-cv-00071 |
| v. | : | Judge Smith |
| **Director Terry Collins,** *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

## ORDER

Plaintiff Dwight Freeman, an inmate at the Ohio State Penitentiary, brings this prisoner civil rights action under 42 U.S.C. §1983. This matter is before the Court on defendants Lieutenant Kaut and Corrections Officer Hayes' January 27, 2010 objections to the Magistrate Judge's January 13, 2010 Report and Recommendation recommending that defendants' motion for summary judgment be denied (doc. 68).

Upon *de novo* review in accordance with the provisions of 28 U.S.C. §636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation and **DENIES** defendant's motion for summary judgment.

I.     **Allegations in the Complaint**

The complaint alleges that on August 1, 2007, Corrections Officer Hayes threatened to steal plaintiff's property. Freeman complained that he had not received his pain medication. A nurse had correctional officers escort Freeman to his cell so that

1

she could bring the medications to him, but the pain medications never came. Freeman asked defendant Corrections Officer Hayes for his medications. Hayes had a correction officer escort plaintiff to the medical department, but Hayes threatened to steal Freeman's property while he was gone. When Freeman got back to his cell block, his personal property was on Hayes' desk. Freeman complained to defendant Lieutenant Kaut, who told him he was going to J-2 "for threats to my officer." Freeman denied making any threats. When Corrections Officer Hayes returned Freeman to his cell, Lieutenant Kaut sprayed him with mace without provocation and despite medical documentation indicating that chemical agents should not be used on plaintiff because of his medical condition. After he was sprayed with mace, Freeman alleges that he received no medical treatment and was left choking in his cell.

## II. Arguments of the Parties

Defendants maintain that Freeman failed to come forward with evidence to demonstrate a genuine issue of material fact. Rather than responding to defendants' motion for summary judgment and supporting it with evidence in the form of affidavits and exhibits, Freeman simply accused the Magistrate Judge of racial prejudice and bias. Defendants argue that the Magistrate Judge recommended denial of their unrefuted motion for summary judgment based on affidavit attached to Freeman's response to an earlier motion. Defendants contend that the Magistrate Judge has assumed the role of advocate for plaintiff when he relied on an affidavit that Freeman submitted nearly a year ago in response to an earlier motion for summary judgment.

2

Defendants also argue that they did not violate Freeman's Eighth Amendment rights because no malicious force was used on him. The Sixth Circuit has repeatedly held that the use of chemical spray is not malicious or sadistic. Defendants maintain that chemical spray was used to gain control of Freeman and to prevent further attack on Officer Hayes. According to defendants, Freeman spit on, threatened, and then threw an object at Officer Hayes. Freeman has not shown any documentation supporting his assertion that defendants were aware of a medical restriction preventing the use of chemical spray on Freeman. Defendants also point out that Freeman only alleged that he experienced a choking sensation, sore throat, and difficulty breathing following the use of chemical spray. These reactions are typical, and Freeman's lack of injury support the fact that defendants did not have a malicious intent in using chemical spray to subdue him.

Defendants further argue that they are entitled to qualified immunity because Freeman has not established that he suffered a deprivation of his constitutional rights or that the actions of defendants were objectively unreasonable.

Freeman did not file a response to defendants' objections.

### III.  Summary Judgment

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted). Inferences to be drawn from the underlying facts contained in such materials must be

4

considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)). As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259 (1968)(footnote omitted).

**IV. Discussion**

As the Magistrate Judge stated, the Eighth Amendment protects prisoners from cruel and unusual punishment. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is. . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). To maintain prison security, discipline may require that inmates be subjected to physical contact that would be actionable as assault under common law. *Combs v. Wilkinson*, 315 F.3d 548 (6th Cir. 2002). A violation of the Eighth Amendment only occurs when the conduct reflects an unnecessary and wanton infliction of pain. *Id.* Factors to consider in determining whether the use of force was wanton and unnecessary include the extent of injury suffered by the inmate, "the need for application of force, the relationship between that need for force and the amount of force used, the threat "reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id. (quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Supreme Court stated:

> Where a prison security measure is undertaken to resolve a disturbance. . . that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Johnson v. Glick*, 481 F.2d 1028, 1033 (CA2) (Friendly, J.), cert. denied sub nom. *John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). As the District Judge correctly perceived, "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted," 481 F.2d, at 1033, are relevant to that ultimate determination. *See* 546 F.Supp., at 733. From

6

such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. *See Duckworth v. Franzen*, 780 F.2d 645, 652 (CA7 1985) (equating "deliberate indifference," in an Eighth Amendment case involving security risks, with "recklessness in criminal law," which "implies an act so dangerous that the defendant's knowledge of the risk can be inferred"). . . . But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.

*Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Defendants argue that the Magistrate Judge took on the role of advocate for Mr. Freeman by referring to his affidavit submitted in response to defendant's earlier motion for summary judgment. The Magistrate Judge's Report and Recommendation relied entirely on Freeman's deposition that defendants submitted:

> In his deposition, Freeman testified that when he asked Hayes to have him taken to the medical department, Hayes told him that he would go through Freeman's cell and take his belongings. Freeman Dep. at 54:14-18. When Freeman returned from the medical department, he saw his belongings on Hayes' desk. Freeman requested to see a supervisor. Hayes told him to "lock up", and Freeman complied with his order. *Id.* at 55:9-18. When Lieutenant Kaut arrived, he said that Freeman was going to "the hole" for threatening an officer. Freeman denied that he had threatened anyone. It was at that point that Kaut and Hayes maced him. *Id.* at 55:24 - 56:10. Freeman did testify that "I told them I ain't going to J2. I ain't did nothing." *Id.* at 72:18-19.
> Freeman also testified that he never refused to uncuff. *Id.* at 66:13-25. Freeman also maintains that he never spit on Officer Hayes. *Id.* at 69:4-9. According to plaintiff, Lieutenant Kaut never asked him to "cuff up" for transport and that he never refused any such request. *Id.* at 73:19-22. Freeman also denied picking up an object in his cell and throwing it at Hayes. *Id.* at 91:21-92:20.
> Freeman contends that he has a medical issue which prohibits the use of chemical spray on him. He maintains that he has documentation

7

> that demonstrates that guards are not permitted to use chemical spray
> because of his past surgeries on his neck and throat. *Id.* at 75:19-76:11. He
> testified that "They sprayed that stuff and wouldn't stop. They kept on
> spraying." *Id.* at 96:17-18. Freeman estimated that they sprayed him for
> 30-35 seconds. *Id.* at 97:23-24. Freeman alleged that he was sprayed in the
> face, causing him to choke and vomit. *Id.* at 93. A nurse was called to the
> cell, and Freeman cleaned the spray off of his face with soap and water.
> *Id.* at 93:6-15. He maintains that he continued to experience symptoms
> until the next day. *Id.* at 94:11.
>
> Here, there is a question of material fact. Freeman denies any
> conduct that would have justified the use of chemical spray. Freeman
> claims he did nothing to provoke defendants. Defendants maintain that
> they were not aware of any medical condition which restricted the use of
> chemical spray on Freeman. If, however, the use of chemical spray was
> unprovoked as Freeman maintains, it is not necessary for Freeman to
> demonstrate that he suffered a serious injury because the use of chemical
> spray on him was prohibited. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).
> On the other hand, if Freeman refused to be handcuffed, spit on Officer
> Hayes, and threw an object at him, however, defendants' conduct would
> have been reasonable under the circumstances. Measures taken in
> response to breaches of prison discipline are normally left to the
> discretion of prison administrators. *Whitley v. Albers*, 475 U.S. 312, 322
> (1986). Freeman has not presented any evidence indicating that
> defendants were aware that guards should not use chemical spray on him
> because of his medical condition. Under circumstances where an inmate
> has refused to obey an order and the guard is attempting to restore order,
> the use of chemical spray is not malicious or sadistic. *See Combs*, 315 F.3d
> at 557. In order to determine whether defendants' use of chemical spray
> was malicious, the trier of fact will have to consider the evidence and
> make credibility determinations to make factual findings with respect to
> Freeman's conduct prior to being sprayed with mace.

Doc. 66 at 9-11. The Magistrate Judge did not err in concluding that Freeman's

deposition demonstrates that there is a question of material fact.

The Magistrate Judge also correctly concluded that defendants are not entitled to

qualified immunity because the right of inmates to be free from cruel and unusual

punishment is clearly established. *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

### IV. Conclusion

For the reasons stated above, defendants Lieutenant Kaut and Corrections Officer Hayes' January 27, 2010 objections to the Magistrate Judge's January 13, 2010 Report and Recommendation recommending that defendants' motion for summary judgment be denied (doc. 68) are OVERRULED and the Court ADOPTS the Magistrate Judge's January 13, 2010 Report and Recommendation.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**