# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DWIGHT FREEMAN,

      Plaintiff,

                                      **Civil Action 2:08-cv-71**

      v.                                 **Magistrate Judge Elizabeth P. Deavers**

DIRECTOR TERRY COLLINS, *et al.*,

      Defendants.

## OPINION AND ORDER

Plaintiff, Dwight Freeman, an Ohio inmate, brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants Kaut and Hayes utilized excessive force in violation of the Eighth Amendment to the United States Constitution. This matter is set for a jury trial to begin on February 10, 2014. Both Defendants and Plaintiff have moved *in limine* to exclude certain evidence at trial. (ECF Nos. 205, 206, 207, 208, and 215.) In addition, Plaintiff has filed a Motion to Compel. (ECF No. 212.) This Court addresses each of these motions in turn.

## I.

"A ruling on a motion *in limine* is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Generally,

courts utilize *in limine* rulings to exclude evidence that is clearly inadmissible in an effort to "ensure evenhanded and expeditious management of trials." *Indian Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004) (citation omitted); *see also Yannott*, 42 F.3d at 1007 (noting that *in limine* rulings "allow[] the parties to consider the court's ruling in formulating their trial strategy"); *Laws v. Stevens Transport, Inc.*, No. 2:12-cv-544, 2013 WL 4858653, at *1 (S.D. Ohio Sept. 11, 2013) ("To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds" (citations omitted)).  Courts properly deny or defer ruling on a motions *in limine* where issues such as foundation, relevance, and potential prejudice require the context of the trial for resolution. *Indian Ins. Co.*, 326 F.Supp.2d at 846.  This means that "[t]he court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*." *Id*. at 846–47 (citations omitted).  Finally, because *in limine* rulings are advisory in nature, a court may alter its ruling during the course of the trial.  *Luce*, 469 U.S. at 41–42 (noting that *in limine* rulings may be altered during trial "even if nothing unexpected happens at trial"); *Yannott*, 42 F.3d at 1007 ("[T]he district court may change its ruling on a motion *in limine* where sufficient facts have developed to warrant the change.").

## II.

### A.    Defendants' Motions *in Limine*

Defendants have filed the following four Motions *in Limine*: (1) Motion *in Limine* to Prohibit Plaintiff from Introducing Evidence of 2005 Incident Report (ECF No. 205); (2) Motion *in Limine* to Prohibit Plaintiff from Introducing Evidence of Spoliation (ECF No. 206); (3) Motion *in Limine* to Prohibit Plaintiff from Raising Claims that are not Properly Before this Court (ECF No. 207); and (4) Motion *in Limine* to Prohibit Plaintiff from Offering Non-Expert

Medical Opinions (ECF No. 208). Plaintiff opposes Defendants' Motions. (ECF No. 224.) The Court considers each of Defendants' Motions in turn.

> **1. 2005 Incident Report**

Defendants first ask the Court to exclude evidence concerning a June 17, 2005 Incident Report regarding a prior use of force situation. The June 2005 Incident Report, which was generated in connection with a planned use of force on Plaintiff, reflects that a prison doctor advised a correctional officer that chemical mace should not be utilized during the planned use of force. (ECF No. 119-1.) Defendants maintain that the Incident Report lacks relevance because the instant action involves a reactive use of force, not a planned use of force. Defendants further assert that admission of the Report will confuse the jury.

Plaintiff disputes Defendants' characterization of the use of force as reactive. Plaintiff maintains that because of his medical conditions, he should not have been sprayed with chemical mace. He further contends that "[t]he issue of whether the August 1, 2007 incident was properly classified as a 'reactive' use of force, or whether it should have instead been classified as a 'planned' use of force like the June 17, 2005 incident is one of the central issues in this case and is hotly disputed." (Pl.s' Opp. to Defs.' Mots. *in Limine* 8–9, ECF No. 224.) Citing ODRC's policies, Plaintiff points out that if Defendants had treated the incident as a planned use of force situation, they would have been required to contact the medical department. Plaintiff argues that the June 2005 Report is probative of whether Defendants "would have been similarly advised" that Plaintiff's medical conditions prohibited the use of chemical mace if they had consulted with the prison's medical department prior to using force on August 1, 2007. (*Id.* at 9.)

Although the Court agrees that the June 2005 Report is probative of whether Defendants "would have similarly been advised" had they consulted with the prison's medical department,

the Court is unable to discern the relevancy of this line of inquiry in the absence of any evidence suggesting that Defendants had consulted with the prison medical department or reviewed the June 2005 Report *prior* to the August 1, 2007 incident.  Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; *and* (b) the fact is of consequence to determining the action."  Fed. R. Evid. 401 (emphasis added). Evidence that does not satisfy this definition of relevancy is not admissible.  Fed. R. Evid. 402. Further, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Here, the Court questions the materiality of demonstrating what Defendants may have learned had they consulted the prison's medical department.

It is well settled that in order to prevail on his Eight Amendment claim, Plaintiff must demonstrate that the alleged assault "was carried out maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline."  *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010) (internal quotation marks and citation omitted); *see also Booher ex rel. T.W. v. Montavon*, No. 13-3458, --- F. App'x ----, 2014 WL 259865, at *3 (6th Cir. Jan. 24, 2014) ("[T]he question is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." (internal quotation marks and citation omitted)).  Relevant considerations include "the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison official, and any efforts made to temper the severity of the forceful response."  *Richmond v. Settles*, 450 F. App'x 448, 453 (6th Cir. 2011) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

4

Thus, Plaintiff correctly points out that whether or not he posed an immediate threat requiring reactive force as contrasted with a threat that could be planned for (as Plaintiff alleges) is relevant.  It does not, however, follow that the information Defendants could have learned but did not is material to the jury's evaluation of the reasonableness of Defendants' actions.  In other terms, the information contained in the 2005 Report, which Defendants did not review, does not inform the key issue of whether Defendants acted sadistically or maliciously on August 1, 2007.  To the extent the information contained in the 2005 Report is minimally relevant to the issue of the severity of the injuries Plaintiff sustained, its probative value is outweighed by the risk of confusion.

Accordingly, given the absence of any evidence suggesting that Defendants had consulted with the prison medical department or reviewed the June 2005 Report *prior* to the August 1, 2007 incident, Plaintiff's Motion *in Limine* to exclude the June 2005 Incident Report is **GRANTED** with the understanding that the Court may alter its ruling as appropriate within the context of the facts developed at trial.  For example, the Court may change its ruling regarding the admissibility of the June 2005 Incident Report should facts develop at trial suggesting that Defendants had, in fact, either reviewed the June 2005 Report or had consulted with the prison's medical department regarding Plaintiff or through some other means knew of Plaintiff's alleged medical restriction against the use of chemical spray prior to the August 1, 2007 incident.

### 2.     Evidence of Spoliation

Defendants next move to prohibit Plaintiff from presenting argument or testimony regarding spoliation of evidence.  Conversely, in his Omnibus Motion *in Limine*, Plaintiff moves *in limine* for the Court to issue an order for an adverse inference instruction to the jury as a result

of Defendants' spoliation of evidence. (ECF No. 215.) The Court considers Defendants' Motion *in Limine* to Prohibit Plaintiff from Introducing Evidence of Spoliation (ECF No. 206) together with Plaintiff's request for an adverse inference *infra* at Section II.B.1.

### 3. Deprivation of Property Claim

Defendants next ask the Court to "preclude [] Plaintiff from raising or [referring to] his deprivation of property claim." (ECF No. 207.) Defendants maintain that their request is proper because "[t]his Court has already determined that Plaintiff's claim against Defendant Hayes regarding his personal property [is] not actionable under 42 U.S.C. § 1983 unless a plaintiff pleads and proves that the Ohio court remedies for addressing the wrong are inadequate." (*Id.*)

Plaintiff indicates that he has no intention of seeking monetary recovery on the basis of Defendant Hayes' wrongful destruction of his property. He opposes Defendants' request to the extent Defendants seek an order precluding them from presenting evidence and argument of the fact that Defendant Hayes improperly removed Plaintiff's property from his cell. Plaintiff maintains that facts relating to the property removal "are vital to explaining the circumstances and potential motives surrounding the altercation between Plaintiff and Defendants on August 1, 2007." (Pl.'s Opp. to Defs.' Mots. *in Limine* 6, ECF No. 224.)

The Court agrees with Plaintiff that the facts regarding the alleged removal and destruction of property are relevant and admissible. The parties agree that Defendant Hayes removed Plaintiff's property from the jail cell on August 1, 2007 prior to the subject incident. As the Court acknowledged in its January 18, 2013 Report and Recommendation, a jury could reasonably infer that "Hayes' wrongful destruction of Plaintiff's property is some evidence or proof that he harbored malice toward Plaintiff." (Jan. 18, 2013 Report and Rec. 11, ECF No. 177.) Thus, to the extent Defendants' Motion *in Limine* seeks to exclude testimony and evidence

6

relating to Defendant Hayes' alleged removal and destruction of Plaintiff's property, their Motion is **DENIED**. The Court notes, however, that although evidence relating to the property removal and destruction is admissible, the Court will not permit the parties to conduct a mini-trial on this collateral issue.

### 4. Non-Expert Medical Opinions

In their final Motion, Defendants ask the Court to preclude Plaintiff from offering his non-expert, medical opinion "regarding either the purported interplay between the vertebra system and the respiratory system of the human body, or purported medical effects of using OC spray on an individual who underwent a laminectomy procedure two years prior." (ECF No. 208.)

Plaintiff responds that he has no intention of offering qualified medical opinions. He represents that instead, he intends to provide basic lay witness testimony concerning the subjective sensations he felt when Defendant Kaut sprayed him with mace. He also intends to testify that he underwent a laminectomy and subsequent throat surgery.

The Court agrees with Defendants that Plaintiff is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" such that he may offer opinion witness testimony. Fed. R. Civ. P. 702. Given Plaintiff's clarifications, Defendants' Motion *in Limine* is **DENIED AS MOOT** insofar as Plaintiff would seek to testify concerning "the purported interplay between the vertebra system and the respiratory system of the human body" or "the purported medical effects of using OC spray on an individual who underwent a laminectomy procedure." Plaintiff may, of course, offer testimony concerning the pain he experienced when sprayed with mace and is also free to testify that he underwent a laminectomy and subsequent throat surgery two years prior to the incident pursuant to Federal Rule of

Evidence 701.

**B.     Plaintiff's Motions *in Limine***

In his Omnibus Motion *in Limine*, Plaintiff moves *in limine* for the Court to issue the

following orders: (1) an order for an adverse inference instruction to the jury as a result of

Defendants' spoliation of evidence; (2) an order excluding from admission at trial all evidence

of, and argument questioning about, unrelated lawsuits and grievances filed by Plaintiff; (3) an

order excluding from admission at trial all evidence of, and argument and questioning about,

Plaintiff's prison disciplinary record and prior altercations with prison officials; (4) an order

excluding from admission at trial evidence of Plaintiff's convictions prior to his present

incarceration; (5) an order excluding from admission at trial all evidence of Plaintiff's

masturbation; and (6) an order permitting Plaintiff to appear at trial in street clothes and

unshackled.  (ECF No. 215.)  With very few exceptions, Defendants oppose Plaintiff's requests.

(ECF No. 222.)  The Court considers each of Plaintiff's requests in turn.

**1.     Request for an Adverse Inference Instruction**

It is undisputed that a surveillance camera captured all or part of the August 1, 2007

incident at issue in this action.  The prison's Use of Force Committee reviewed the video in

connection with their investigation, noting in its Report that "[t]he video of the incident is

consistent with the staff members' testimony."  (Sept. 4, 2007 Report 2, ECF No. 215-5.)

Plaintiff made multiple requests for the video, making his first request less than a year after the

incident.  Defendants did not produce the video and informed Plaintiff that it no longer existed.

Plaintiff asks to the Court to sanction Defendants for the spoliation of the video in the

form of adverse-inference instructions relating to the destruction of the video.  In support of this

request, Plaintiff asserts that regardless of Defendants' retention policy, they had an obligation to

preserve the video because they were on notice that the video would have been relevant to future litigation.  Plaintiff asks that the Court give the following adverse inference at trial:

## SPOLIATION OF EVIDENCE:  ADVERSE INFERENCE

Evidence has been introduced that the surveillance video of the K-1 cell block captured all or part of the altercation between Plaintiff Freeman and Defendants at issue in this case.  Under the law, where a plaintiff is unable to provide the jury with evidence that was in the exclusive possession of the defendants but was lost or destroyed, such as the surveillance video, a presumption arises that had the video been preserved, the videotape would have been favorable to the plaintiff and unfavorable to the defendants.  Such a presumption exists in this case.

In this case, the surveillance videotape was in the exclusive possession of Defendants' employer, the Ohio Department of Rehabilitation and Corrections, for whom Defendants were acting in their official capacity at the time of the altercation between Plaintiff Freeman and Defendants. The videotape has been lost or destroyed and Defendants have failed to produce it.

Therefore, the Court directs you to find the following as a matter of fact:

1.     If the video had been produced, it would not have captured footage of Plaintiff Freeman threatening Defendant Hayes;

2.     If the video had been produced, it would not have captured footage of Plaintiff Freeman spitting on Defendant Hayes;

3.     If the video had been produced, it would not have captured footage of Plaintiff Freeman picking up an object in his cell and lifting his arm as though to throw that object;

4.     If the video had been produced, it would have captured footage of Defendants Hayes and Kaut spraying Plaintiff Freeman in the face with mace for approximately 30–35 seconds.

(Pl.'s Omnibus Mot. *in Limine* 11-12, ECF No. 71.)

Defendants assert that spoliation sanctions are not warranted under the circumstances.  In addition, Defendants request an order precluding Plaintiff from introducing evidence concerning the destruction of the video at trial.  In support of this request, Defendants represent that the video "was recycled in the regular course of business."  (Def's Mot. 2, ECF No. 206.)  They

9

argue that sanctions are not appropriate because neither Defendant Kaut nor Defendant Hayes had control over the video. (*Id*.) Defendants also contend that "the issue of spoliation is not properly before the Court" because Plaintiff waited too long to raise the issue. (*Id*.)

"Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003). This Court has "broad discretion when deciding to issue an adverse-inference instruction." *Allied Erecting & Dismantling, Inc., v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 408 (6th Cir. 2013) (citing *Adkins v. Wolever*, 554 F.3d 650, 652–53 (6th Cir. 2009) (en banc)).

> [A] a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. United States Dep't of Justice*, 622 F.3d 540, 554 (6th Cir. 2010) (internal quotation marks and citations omitted). "[T]he obligation element is met where a defendant knows evidence might be relevant to future potential litigation." *Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn*, 502 F. App'x 523, 532 (6th Cir. 2012) (citation omitted); *see also Beaven*, 622 F.3d at 553 ("An obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation." (internal quotation marks and citation omitted)). In addition, "the 'culpable state of mind' element may be satisfied by showing only that 'the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently.'" *Id*. (quoting *Beaven*, 622 F.3d at 554).

Once a trial court has determined that the party seeking the adverse inference has

10

established the requisite three elements, it must determine what sanctions are appropriate. On this issue, the *Beavens* Court provided the following guidance:

> When appropriate, "a proper spoliation sanction should serve both fairness and punitive functions," but its severity should correspond to the district court's finding after a "fact-intensive inquiry into a party's degree of fault" under the circumstances, including the recognition that a party's degree of fault may "'rang[e] from innocence through the degrees of negligence to intentionality.'" *Adkins*, 554 F.3d at 652–53 (quoting *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988), overruled on other grounds by *Adkins*, 554 F.3d 650). "Thus, a district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Id.* at 653 (citing [*Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)]).

622 F.3d at 554.

The Court concludes that spoliation sanctions are warranted in the instant action. As a threshold matter, the Court rejects Defendants' assertion that Plaintiff's request for sanctions is untimely. No federal rule dictates the timing of a request for spoliation sanctions. Rather, trial courts are free to consider a number of factors. *See, e.g.*, *Goodman v. Praxair Servs., Inc.*, 632 F.Supp.2d 494 (D. Md. 2009) (indicating that Federal Rule of Civil Procedure 37 does not govern the timing of the filing of a motion seeking spoliation sanctions and setting forth a number of factors courts may consider in evaluating timeliness). This Court has previously concluded that a party who fails to raise the issue of spoliation sanctions prior to or within the final pretrial order has waived the issue absent an explanation for the delay. *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06–cv–569, 2008 WL 2491747, at *2–3 (S.D. Ohio June 18, 2008) (indicating that the plaintiff "could have raised the issue [of spoliation sanctions] in the final pretrial order," explaining that "[t]he purpose of a Final Pretrial Order is to conclusively fix the issues that remain to be litigated"). In this instant action, the Court has not yet entered a final pretrial order. Further, Plaintiff raised the issue of spoliation sanctions in multiple filings prior

11

to the parties' filing of their Proposed Joint Final Pretrial Order. (*See* ECF Nos. 212, 213, 215, 224, and 225.) He then raised the issue twice in the Proposed Joint Final Pretrial Order. (ECF No. 225 at 4, 8.) The undisputed procedural history of this action also informs this Court's decision, including all of the following: Defendants' refusal to respond to Plaintiff's formal requests for the operative retention policy; the protracted settlement negotiations, during which time the parties requested a stay of case deadlines; the withdrawal of Plaintiff's counsel following the break-down of the parties' settlement efforts; and Plaintiff's counsel's efforts to obtain documentation of the operative retention policy promptly after reappointment in December 2013. This history demonstrates that Plaintiff's delay is not attributable to inattention, neglect, or an attempt to achieve some sort of tactical advantage. Under these circumstances, the Court declines to deny Plaintiff's request for spoliation sanctions on timeliness grounds.

Having reviewed the factors set forth in *Beavens,* the Court concludes that spoliation sanctions are appropriate. Defendants do not dispute the video's obvious relevance to the instant action. Defendants do, however, challenge the first two *Beavens* elements. With regard to the first element—whether Defendants had an obligation to preserve the evidence at the time it was destroyed—Defendants argue that no such obligation existed here because neither Defendant Kaut nor Defendant Hayes had control over the video. This contention lacks merit. As Plaintiff points out, he has sued Defendants Kaut and Hayes in their official capacities as well as in their individual capacities. Thus, this action is a suit against the State of Ohio, in addition to one against Defendants Kaut and Hayes personally. *See Briner v. City of Ontario*, 370 F. App'x 682, 699 (6th Cir. 2010) ("An official capacity suit is, in all respects other than name, to be treated as a suit against the entity.") ODRC is an instrumentality of the state of Ohio. *Lowe v. Ohio Dep't of Rehab.*, No. 97–3971, 1998 WL 791817, at *2 (6th Cir. Nov. 4, 2008). Regardless, "[e]ven

12

where a party does not own or control the evidence, the party still has a duty to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Jain v. Memphis Shelby Cnty. Airport Auth.*, No. 08-2119, 2010 WL 711328, at *2 (W.D. Tenn. Feb. 25, 2010) (internal quotation marks and citation omitted).

Thus, with regard to the first element, the issue is whether, at the time of destruction, Defendants knew or should have known that the video "might be relevant to future potential litigation." *Johnson*, 502 F. App'x at 532; *Beaven*, 622 F.3d at 553. Unfortunately, Defendants have not informed this Court as to the specific time when the video was destroyed. As best as the Court can discern, the destruction occurred sometime between the Use of Force Committee's review of the video on September 4, 2007, and Defendants' responses to Plaintiff's initial discovery requests on July 8, 2008. Based upon the record before the Court, any assertion that Defendants had no reason to believe during this time frame that the video may be relevant to future litigation is simply not credible. Tellingly, in opposing Plaintiff's request to exclude evidence of his unrelated lawsuits and grievances, Defendants argued that Plaintiff's *modus operandi* involved "tak[ing] steps to cause a use of force against him for the purpose of initiating grievances and lawsuits against prison staff."[1] (Defs.' Opp. to Pl.'s Omnibus Mot. *in Limine* 8, ECF No. 222.) Further, following the August 1, 2007 incident, Plaintiff filed a grievance, requested a transfer, and offered a statement to the Use of Force Committee that varied significantly from Defendants' version of the facts. Based upon these circumstances, the Court

---

[1]Notably, Defendants also advanced this argument several years ago in *Freeman v. Wilkerson*, No. 2:05-cv-1085, 2010 WL 3959811 (S.D. Ohio Oct. 8, 2010), in support of their contention that they should be permitted to introduce evidence of Plaintiff's scheme to file grievances and lawsuits after being subjected to force.

readily concludes that Defendants were on notice or should have been on notice that the video at issue might have been relevant to future potential litigation such that they had a duty to preserve it.

Defendants suggestion that the records were not destroyed with a culpable state of mind because they were recycled in the regular course of business is equally unpersuasive. As set forth above, this "element may be satisfied by showing only that 'the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently.'" *Johnson*, 502 F. App'x at 532 (quoting *Beaven*, 622 F.3d at 554). This element is readily satisfied here. *See E.E.O.C. v. JP Morgan Chase Bank, N.A.*, 295 F.R.D. 166 (S.D. Ohio 2013) (employer not insulated from spoliation sanctions where the destruction of the evidence at issue was part of the employer's "routine purge" of electronic records).

The degree of Defendants fault, however, is relevant to this Court's analysis of the appropriate sanction. *Beaven*, 622 F.3d at 554. Plaintiff's proposed mandatory adverse inference is unduly harsh in the absence of evidence that Defendants intentionally destroyed the video so that it could not be utilized at trial. In crafting the appropriate sanction, this Court must conduct "a 'fact-intensive inquiry into a party's degree of fault' under the circumstances." *Id.* (quoting *Adkins*, 554 F.3d at 652–53.) Although Defendants assert that the video was destroyed in the regular course of business pursuant to the destruction policy in place at the time, they have offered no evidence of the operative destruction policy or any evidence demonstrating *when* the video was actually destroyed. The Court is not required to simply accept Defendants' statements as true when they can readily adduce evidence that would establish the veracity of their statements. Moreover, it is unclear whether copies of the video were provided to the Use of Force Committee for their review and if so, *when* those copies were destroyed. In order to assist

14

the Court in ascertaining the appropriate spoliation sanction, Defendants are **DIRECTED to FILE, WITHIN SEVEN (7) DAYS**, copies of any operative record retention policies.  In addition, Defendants must file evidence demonstrating when the video at issue was destroyed. Finally, Defendants must ascertain whether copies of the video where made for the review of the Use of Force Committee, and if so, when those copies were destroyed.  If appropriate, Defendants should file affidavits of individuals with personal knowledge of the details surrounding the destruction of the video at issue.  Upon review of the evidence, the Court will issue a separate order imposing spoliation sanctions.

### 2.    Plaintiff's Unrelated Lawsuits and Grievances

Plaintiff asks the Court to exclude evidence reflecting that he has filed approximately a dozen lawsuits and numerous other grievances against prison staff for incidents unrelated to the incident at issue in this lawsuit.  He maintains that evidence of these extraneous lawsuits and grievances would unfairly prejudice him and confuse the jury.  He further asserts that the existence of or circumstances underlying these other lawsuits and grievances "have no bearing on the jury's determination of what happened during the [August 1, 2007] altercation."  (Pl.'s Omnibus Mot. *in Limine* 12–14, ECF No. 215.)  He adds that introduction of this evidence "would inevitably involve a detailed inquiry into the facts of these other disputes."  (*Id.*)

Defendants oppose Plaintiff's request.  Defendants indicate that they intend "to present evidence that Plaintiff intentionally takes steps to cause a use of force against him for the purpose of initiating grievances and lawsuits against prison staff."  (Defs.' Opp. to Pl.'s Omnibus Mot. *in Limine* 8, ECF No. 222.)  Defendants argue that the evidence of Plaintiff's numerous other lawsuits and grievances is probative of his motive and *modus operandi*, especially in light of his testimony that he has received settlement awards in previous excessive force lawsuits.

15

Defendants point out that in a prior excessive force action, *Freeman v. Wilkerson*, No. 2:05-cv-1085, 2010 WL 3959811 (S.D. Ohio Oct. 8, 2010), the Court concluded that Plaintiff's history of filing grievances and initiating lawsuits to be admissible as evidence of motive during the incidents at issue in that case.

This Court's analysis of the admissibility of Plaintiff's other acts is guided by Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Such other-acts evidence may, however "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The United States Court of Appeals for the Sixth Circuit has offered the following guidance regarding a trial court's resolution of disputes concerning the admissibility of other-acts evidence:

> District courts follow a three-step process in evaluating the admissibility of prior-acts evidence under Fed. R. Evid. 404(b): "First, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. Second, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. Third, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect."

*United States v. Ray*, No. 12-6180, --- F. App'x ----, 2013 WL 6670785, at *2–3 (6th Cir. Dec. 18, 2013) (quoting *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012)).

In *Freeman v. Wilkerson*, the Court permitted the defendants to introduce evidence of Plaintiff's disciplinary record and litigation history. 2010 WL 3959811 at *3–4. The Court analyzed these issues as follows:

Defendants argue that evidence of plaintiff's disciplinary record will demonstrate his intention, motive, and plan to routinely incite the need for an extraction team and the use of force to stabilize and secure the situation. Defendants maintain that once Freeman instigates the use of force, he proceeds through the prison grievance procedure and files suit in federal court. Defendants maintain that the introduction of this evidence will demonstrate plaintiff's plan, motive, and intention in creating the need for force as well as his misuse of the grievance process and the federal court system.

Defendants argue that the proposed evidence will demonstrate to the jury plaintiff's plan, motive, intent when he refused to relinquish his hand cuffs and used them as a weapon because he knew the extraction team would be called to remove the handcuffs. I agree that if Freeman has a history of repeatedly refusing to obey correctional officers' direct orders and persisting in that refusal to the point of requiring an extraction team to enter the cell that would be some evidence of his state of mind during the incidents to be tried. So I will not prohibit defendants' counsel from questioning plaintiff about past similar incidents. Plaintiff is free to object on the ground that the incident would shed no light on his state of mind during the incidents at issue. However, I will not permit defendants to offer evidence regarding prior incidents. Only the two incidents pleaded in the complaint will be tried. It would waste the jurors' time and create the danger there their attention would be directed from the issues on trial if there would be a trial of collateral issues regarding the incidents defendants seeks to offer as proof of motive, intent, and state of mind

*Plaintiff's History of Litigation.* Defendants maintain that evidence of plaintiff's litigation history is evidence of his motive, intent, and state of mind. I agree that plaintiff's history of filing grievances and initiating lawsuits would be some evidence of motive during the incidents to be tried. Defendants' counsel may question plaintiff about his history of litigating these types of incidents. Plaintiff is free to object on the ground that his previous lawsuits would shed no light on his state of mind during the incidents at issue. Defendants may not offer evidence regarding other lawsuits. As I previously stated, it would waste the jurors' time and create the danger that their attention would be directed from the issues on trial if there would be a trial of collateral issues regarding the incidents defendants seeks to offer as proof of motive, intent, and state of mind.

2010 WL 3959811 at *3–4.

The Court sees no reason to reach a different result in this case. The parties do not dispute that Plaintiff has filed numerous other lawsuits and grievances. And the Court agrees with Defendants and the Court's finding in *Freeman v. Wilkerson* that the evidence is probative of a material issue other than character. Significantly, Plaintiff testified that every time a cell

17

extraction team had to be called to remove him from a cell (approximately four or five times), he later filed a federal excessive force lawsuit. (Oct. 26, 2007 Freeman Dep., Ex. D to Def's Opp. to Pl.'s Omnibus Mot. *in Limine* 8, ECF No. 222.) Finally, the Court concludes that the probative value of the evidence at issue substantially outweighs its prejudicial effect.

Accordingly, Plaintiff's Motion requesting the Court to exclude evidence that Plaintiff has filed approximately a dozen other lawsuits and numerous grievances is **DENIED** insofar as those lawsuits and grievances involve complaints of excessive force. Lawsuits and grievances not related to complaints of excessive force lack a sufficient nexus with the August 1, 2007 incident such that any minimal relevance is substantially outweighed by the risk of prejudice and confusion. Further, consistent with the Court's ruling in *Freeman v. Wilkerson*, the Court will not permit Defendants to produce detailed evidence regarding the other lawsuits and grievances in the instant action as this "would waste the jurors' time and create the danger that their attention would be directed from the issues on trial if there would be a trial of collateral issues regarding the incidents [Defendants] seek to offer as proof of motive, intent, and state of mind." *Id*. at *4. Finally, the Court notes that Plaintiff is free to suggest a limiting instruction to offset any concerns that he may have that the jury might misuse the evidence.

### 3. Plaintiff's Prison Disciplinary Record and Prior Altercations With Prison Officials

Plaintiff similarly asks the Court to exclude evidence of his disciplinary record or of any of his past altercations with prison personnel. Plaintiff submits that admission of this evidence "would invariably create an impermissible inference that [he] had a propensity for violence at the time the incident occurred, rendering such evidence inadmissible under both Rule 404 and Rule 403." (Pl.'s Omnibus Mot. *in Limine* 15, ECF No. 215.) Defendants counter that they are not

18

seeking to introduce the evidence of Plaintiff's prison discipline proceedings or other misconduct to show his propensity towards violence, but instead that they seek to introduce the evidence for a number of permissible purposes, including as evidence of Plaintiff's motive, intent, and state of mind; as evidence to demonstrate the reasonableness of the threat perceived by Defendant Kaut when he utilized the mace spray on Plaintiff; as impeachment evidence; and as evidence for mitigation of damages. The Court addresses the propriety of each of Defendants' expressed intentions for utilizing the evidence of Plaintiff's disciplinary record and prior altercations in turn.

For the reasons expressed in *Freeman v. Wilkerson* and incorporated herein by reference, evidence of Plaintiff's disciplinary record and prior altercations is admissible because it is probative of Plaintiff's motive, intent, and state of mind during the August 1, 2007 incident and because the probative value substantially outweighs the risk of prejudice. *See* 2010 WL 3959811 at *3–4. Consistent with the limitations placed on the admission of evidence of Plaintiff's other lawsuits and grievances, evidence of his disciplinary record and prior altercations is only admissible to show motive, intent, and state of mind to the extent there exists a sufficient nexus between these other acts and the August 1, 2007 incident. Only disciplinary records and evidence of altercations in which Plaintiff instigated the use of force are sufficiently related. Although Defendants may question Plaintiff about past similar incidents, they may not offer detailed evidence regarding the other incidents.

Defendants also seek to introduce this evidence to demonstrate the reasonableness of the threat perceived by Defendant Kaut when he utilized the mace spray on Plaintiff. During the course of his deposition, Defendant Kaut testified that prior to the August 1, 2007 incident, he had observed Plaintiff assault members of prison staff. He also testified that Plaintiff was

19

"notorious for assaulting staff," and that it was "well known if you had to interact with him that

you had better keep your eyes open and . . . be ready protect yourself because he had a reputation

of being assaultive towards staff." (Kaut Dep. 16, ECF No. 162.) As discussed above, a central

inquiry in this case is whether Defendant Kaut "maliciously and sadistically" sprayed Plaintiff

with mace "rather than as part of a good-faith effort to maintain or restore discipline." *Wilkins*,

559 U.S. at 40. In resolving this factual inquiry, "the threat reasonably perceived by the prison

official" is relevant. *Richmond*, 450 F. App'x at 453. Defendant Kaut's awareness of Plaintiff's

reputation for violence is therefore relevant to the inquiry regarding the reasonableness of the

threat he perceived and, in turn, to the evaluation of the reasonableness of the force he employed.

*See*, *e.g.*, *White v. Johnson*, No. 90-1008, 1991 WL 16014, at *1 (6th Cir. Feb. 8, 1991) (district

court did not err "in allowing [inmate] to be cross-examined concerning his misconduct record,

as that evidence was relevant to the issue of whether the defendant prison guards used excessive

force against him" (citing *Young v Rabideau*, 821 F.2d 373, 377–81 (7th Cir. 1987)); *Hagan v.*

*Gross*, No. 1:10-cv-883, 2013 WL 2338438, at *5 (M.D. Pa. May 29, 2013) ("[I]f the individual

corrections officers were aware of the plaintiff's prior criminal conduct and propensity for

violence while incarcerated, and this information helped to form a basis to assess the threat level

that the plaintiff presented, then knowledge of such history would be relevant to the inquiry as to

whether the force used against plaintiff was reasonable under the circumstances." (internal

quotation marks and citations omitted)). Accordingly, Defendant Kaut may offer testimony

regarding altercations he observed and regarding any other bases for his testimony that Plaintiff

was "notorious for assaulting staff" as this evidence is probative of whether Defendant Kaut

reasonably perceived a threat. Defendants may not, however, offer evidence of those incidents

of which Defendant Kaut was unaware in an effort to corroborate his testimony that Plaintiff had

a reputation for violence because the probative value of such evidence does not outweigh its risk of prejudice.

Defendants also argue that evidence of Plaintiff's disciplinary record or of any of his past altercations with prison personnel is admissible to "respond to Plaintiff's claims that he never assaulted or threatened prison staff."  (Defs.' Opp. to Pl.'s Omnibus Mot. *in Limine* 6, ECF No. 222.)  Defendants explain that Plaintiff testified in his October 26, 2007 deposition that he could not recall ever assaulting or threatening staff at any correctional institution.  The Court declines to resolve the propriety of utilizing this evidence for impeachment purposes outside the context of the trial.  In the event Plaintiff testifies at trial that he has never assaulted or threatened prison staff, counsel may confer with the Court at sidebar prior to introducing evidence of Plaintiff's disciplinary record or his past altercations with prison personnel for impeachment purposes.

Finally, Defendants assert that evidence of Plaintiff's disciplinary record and prior altercations is relevant to the issue of liability.  Certainly, given Plaintiff's allegations of emotional distress, evidence of other disciplinary actions and/or altercations, depending on their temporal proximity, may inform issues of causation.  In the absence of additional information, however, the Court is unable to provide additional guidance on the admissibility of this evidence for this purpose.

In sum, Plaintiff's request for exclusion of evidence of his disciplinary record or of any of his past altercations with prison personnel is **DENIED** for the reasons described above.  Again, Plaintiff is free to suggest a limiting instruction to offset any concerns that he may have that the jury might misuse the evidence.

### 4.    Plaintiff's Convictions Prior to Present Incarceration

Plaintiff next asks that the Court exclude evidence of any of Plaintiff's criminal

convictions other than those for which he is presently incarcerated.  On, July 23, 2004, Plaintiff

was sentenced for the following crimes for which he is currently serving his sentence:

Aggravated Robbery with a firearm, Kidnapping with a firearm, Theft, and Having Weapons

While Under a Disability.  Plaintiff does not object to the admissibility of evidence of these

convictions.[2]  The record also reflects that Plaintiff has served time in prison for a number of

other offenses, including drug trafficking, receiving stolen property, theft, possessing criminal

tools, robbery, grand theft, assault, aggravated assault, assault on a peace officer, and

intimidation.  Plaintiff objects to introduction of evidence of this latter grouping of criminal

convictions given that these convictions are more than ten years old.  Plaintiff relies on Federal

Rule of Civil Procedure 609.  Defendants oppose Plaintiff's request, asserting that the probative

value of Plaintiff's earlier convictions substantially outweighs any prejudicial effect.

Federal Rule of Evidence 609, which guides this Court's analysis, provides as follows:

(a) General rule. For the purpose of attacking the character for truthfulness of a witness,

> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

---

[2]These more recent convictions would not be precluded by virtue of passage of time under Rule 609(b).  Although Defendants may cross examine Plaintiff about these convictions for impeachment purposes, questioning must be limited to the fact that Plaintiff has been convicted of these various crimes and the resulting imprisonment, without any further detail. *See, e.g.*, *Foster v. McFaul*, No 1:04-cv-1032, 2009 WL 185941, at *2 (N.D. Ohio Jan. 23, 2009) ("To further limit any potential undue prejudice, Defendants may only elicit the fact of the conviction, the date of the conviction, and that [the witness] was serving time in connection with that conviction at the time events relevant to this lawsuit transpired."); *Dawson v. Burnett*, No. 1:08-cv-363, 2010 WL 2232266, at *3 (W.D. Mich. June 3, 2010) ("Defendants are limited to eliciting the charge, the date, and the disposition.").

(2) evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Fed. R. Evid. 609.

Plaintiff's request to for an order to exclude evidence of any of Plaintiff's criminal convictions for which he was released more than ten years ago is **GRANTED** pursuant to Rules 609(b) and 403 insofar as Defendants seek to introduce this evidence on cross examination for impeachment purposes. Although the Court appreciates the relevance of Plaintiff's older convictions to a jury's assessment of his credibility, the probative value of these convictions is outweighed by the risk of prejudice, which is heightened here given the violent nature of some of his older convictions. *See United States v. Huff*, No. 97–6020, 1998 WL 385555 (6th Cir. June 30, 1998) ("[E]vidence of convictions more than ten years old should be admitted very rarely and only in exceptional circumstances." (internal quotation marks and citation omitted)).

### 5. Evidence of Plaintiff's Masturbation

Plaintiff next moves to exclude any evidence reflecting that the prison medical staff were unable to evaluate his complaints of respiratory problems due to his refusal to cease masturbating. Plaintiff maintains that introduction of evidence referencing his masturbation is unfairly prejudicial because it has no bearing on the issues in this case.

23

Defendants oppose Plaintiff's request, asserting that evidence that he repeatedly exposed himself and masturbated in front of the prison medical staff demonstrates "a common scheme, plan, and design to manipulate prison staff into making staff and cell changes and to intimidate staff in an effort to gain certain benefits." (Defs.' Opp. to Pl.'s Omnibus Mot. *in Limine* 15, ECF No. 222.)

Defendants fail to explain, however, how Plaintiff's scheme of masturbating to get cell changes and other prison benefits is relevant to the instant action. Even if the Court were to conclude that the evidence of Plaintiff's masturbation was somehow probative of his alleged scheme to manipulate prison officials, exclusion pursuant to Federal Rule of Evidence 403 is appropriate given that the danger of unfair prejudice substantially outweighs the minimal probative value. *See* Fed. R. Evid. 403. This is especially so given that Defendants have indicated that they will be introducing other evidence, including evidence reflecting Plaintiff's disciplinary record and prior altercations with staff, for the purpose of demonstrating "that Plaintiff intentionally takes steps to cause a use of force against him for the purpose of initiating grievances and lawsuits against prison staff." (*Id.* at 8.) *See Old Chief v. United States*, 519 U.S. 172, 184 (1997) ("[W]hen a court considers 'whether to exclude on grounds of unfair prejudice,' the 'availability of other means of proof may . . . be an appropriate factor.'" (quoting Advisory Committee's Notes on Fed. Rule Evid. 403)). Accordingly, Plaintiff's request for an order excluding any evidence reflecting that the prison medical staff were unable to evaluate his complaints of respiratory problems due to his refusal to cease masturbating is **GRANTED** insofar as Defendants seek to utilize this evidence to demonstrate the Plaintiff engaged in a scheme of manipulation. The Court declines, however, to conclude outside of the trial context that evidence of Plaintiff's masturbation is inadmissible on all potential grounds.

24

### 6.    Appearance at Trial in Street Clothes and Unshackled

Defendants do not oppose Plaintiff's final request, that he be permitted to appear at trial unshackled and in street clothes.  Plaintiff's request to appear in street clothes is **GRANTED**.

With regard to Plaintiff's request to appear unshackled, the Court recognizes that visible shackles is "inherently prejudicial" and should be applied only where security interests outweigh this prejudice.  *See Illinois v. Allen,* 397 U.S. 337 (1970) (discussing the prejudice arising from requiring a criminal defendant to appear before a jury in shackles); *Sides v. Cherry*, 609 F.3d 576, 580–81 (3d Cir. 2010) (acknowledging that the "concerns expressed in *Allen* also apply in the context of civil trial" and collecting cases from four other circuits also recognizing the inherent prejudice arising from an inmate's appearance in shackles in civil suits as well as in criminal actions).  The Court is presently analyzing the necessity of restraints at trial and exploring the feasibility of alternatives to visible shackles.  Accordingly, the Court holds Plaintiff's request to appear unshackled **IN ABEYANCE** and will issue a separate order ruling on this request prior to commencement of trial.

## C.    Plaintiff's Motion to Compel

Plaintiff's Motion to Compel is **DENIED AS MOOT** in light of the Court's directive that Defendants produce the operative retention policy as reflected *supra* at Section II.B.

## III.

As set forth above, the foregoing *in limine* rulings are subject to modification should the facts or circumstances at trial differ from that which has been presented in the parties' pre-trial motions and memoranda.

**IT IS SO ORDERED.**


Date: January 29, 2014                                  _____/s/ *Elizabeth P. Deavers*_____
                                                                    Elizabeth P. Deavers
                                                                    United States Magistrate Judge